AB:RAS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – –X

| | |
|---|---|
| UNITED STATES OF AMERICA | **C O M P L A I N T** |
| - against - | (T. 21, U.S.C., § 846;<br>T. 18, U.S.C., § 3551 et seq.) |
| DAO JIAN CHEN, LONG HUI LIN, a/k/a "DRAGON," JING LIN and DA WU, | 20-MJ-830 |
| Defendants. | |

– – – – – – – – – – – –X

EASTERN DISTRICT OF NEW YORK, SS:

JACKY J. HE, being duly sworn, deposes and states that he is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), duly appointed according to law and acting as such.

On or about September 17, 2020, within the Eastern District of New York, the defendants DAO JIAN CHEN, LONG HUI LIN, a/k/a "DRAGON," JING LIN and DA WU, together with others, did knowingly and intentionally conspire to possess with intent to distribute a controlled substance, which offense involved (i) a substance containing ketamine, a Schedule III controlled substance, (ii) marihuana, a Schedule I controlled substance and (iii) 50 grams or more of a substance containing methamphetamine, a Schedule III controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii), 841(b)(1)(D) and 841(b)(1)(E).

(Title 21, United States Code, Section 846; Title 18, U.S.C., Section 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with HSI and have been since 2016. Prior to that, I was an Officer with Immigration and Customs Enforcement, Division of Enforcement and Removal Operations for approximately nine years. During my tenure at HSI, I have been involved in the investigation of numerous cases involving narcotics distribution. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs and the efforts of persons involved in drug trafficking to avoid detection by law enforcement. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file and from reports of other law enforcement officers involved in the investigation.

2. On or about August 21, 2020, HSI received information that Dutch authorities had seized approximately 35 kilograms of ketamine concealed in a package addressed to Yongxun Trading Co. Ltd. in Colorado Springs, Colorado.

3. On or about September 5, 2020, U.S. Customs and Border Protection ("CBP") officers at John F. Kennedy International Airport ("JFK") conducted a border search on a different package with Airway Bill number 157-2933-1470 (the "Subject Package"), which was manifested as "Garments," transported via Qatar Airways international cargo

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3

service, and shipped from "KBSPK Industries" in Sialkot, Pakistan to "Yongxun Trading CO. LTD." at "Boardwalk Drive Ste Colorado Springs, CO New York, 080919," phone number 1-562-477-0077.

4. Upon examination, the Subject Package contained two boxes. Each box contained sweat suits and, concealed inside the clothing, clear plastic bags containing an off-white powdery substance. The clear plastic bags containing the off-white powdery substance were wrapped in tinfoil. The off-white powdery substance field-tested positive for ketamine, a Schedule III controlled substance.

5. The total amount of ketamine concealed in the Subject Package weighed approximately 19.04 kilograms. The estimated street value for this amount of ketamine is between $761,600.00 and $1,142,000.00.[2]

6. CBP officers and HSI agents removed the ketamine from the Subject Package and re-sealed the Subject Package and conducted a controlled delivery. Based on probable cause to believe that the Subject Package would be opened within the Eastern District of New York, the Honorable Cheryl L. Pollak issued an anticipatory warrant on September 10, 2020, authorizing the United States to search an unknown location to which the Subject Package would be delivered and to seize evidence, fruits and instrumentalities of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963.

7. During the course of the execution of that controlled delivery and execution of the anticipatory search warrant, on September 16, 2020, Ye Zhen Zhao was

---

[2] As of September 2020, ketamine retails in the New York City area for approximately $40 to $60 per gram.

4

stopped while driving a vehicle. During that stop, I observed that she was handling a phone, which she placed on to the driver's seat with the screen on. The WeChat messaging app was visible on the screen, and I observed in plain view that Zhao had been exchanging messages with someone with the name "Dragon" shortly after Zhao took possession of the Subject Package.[3] Dragon, subsequently identified as defendant LONG HUI LIN, wrote to Zhao that after receiving the Subject Package, Zhao should park her vehicle somewhere overnight and wait until the middle of the night to return and check her vehicle.[4] Dragon also advised Zhao to spend some time and "wander" in a mall, call a car service to pick her up, and not wait for "Typhoon" – later identified as Chen Han Chen. Furthermore, Dragon wrote to Zhao that because the Subject Package was not open, "they will normally not take action."

8. After viewing the foregoing messages on defendant Zhao's phone, I arrested Zhao and delivered <u>Miranda</u> warnings in Mandarin.[5] At the scene of arrest, Zhao also gave consent to search her vehicle and the contents of her phone. Upon examination of Zhao's phone, I saw that on September 15, 2020, Dragon had provided information regarding coordination for picking up the Subject Package, and had sent pictures of the Subject Package to Zhao. During a post-arrest interview, Zhao admitted that she knew she was picking up something illegal and that Dragon had instructed her to perform the job. When confronted with a video recorded by Zhao's phone and sent to Dragon that showed individuals stacking

---

[3] Based on my training and experience, I know that WeChat is very popular and widely used by Chinese nationals, including those living abroad in the United States.

[4] I am a certified Mandarin and Cantonese translator.

[5] Two defendants, Chen Han Chen and Ye Zhen Zhao, were arrested and arraigned in the Eastern District of New York on September 17, 2020, in connection with the controlled delivery of the Subject Package.

5

large quantities of U.S. currency inside of a large black bag, Zhao said she had taken the video inside of a residence in Brooklyn, New York that was being used as a stash house for money and possibly narcotics. Zhao informed law enforcement officers that the video had been taken inside the basement of an address on 80th Street in Brooklyn, New York. However, metadata showed that the video was in fact recorded in the vicinity of 1360 79th Street in Brooklyn, New York (the "Premises"). Based in part on this information, among other evidence, law enforcement obtained a warrant to search the Premises (20-MJ-828, the "Premises Search Warrant").

9. On or about September 17, 2020, law enforcement officers and agents surveilled the Premises and executed the Premises Search Warrant.

10. During the initial surveillance, law enforcement observed a blond Asian male, later identified as the defendant JING LIN, hand a bag to an individual in a BMW parked in front of the Premises ("Individual-3"). Law enforcement officers followed and stopped Individual-3's vehicle, at which time Individual-3 admitted to purchasing one pound of marihuana from the Premises. The marihuana was seized by law enforcement after Individual-3 consented to a search of his vehicle. Individual-3 also stated that he had previously made regular marihuana purchases from the Premises.

11. Upon execution of the Premises Search Warrant, law enforcement officers observed the following. In one room ("Room-A"), an Asian male later identified as the defendant DAO JIAN CHEN was found cooking and cutting a substance that appeared to be ketamine with a cutting agent—a chemical that is often used to dilute or adulterate narcotics. Also found in Room-A was 50 grams or more of a substance that field-tested

6

positive for methamphetamine, a Schedule III controlled substance; four digital scales; numerous empty bottles; numerous empty glass vials with labels on which the chemical name for ketamine was printed; numerous zip lock bags; and a microwave that appeared to be used for cooking narcotics.  The microwave was warm and the plate in the microwave had what appeared to be ketamine in glass form.  Law enforcement also found a hidden compartment in the floor of Room A.

12. In a second room in the Premises ("Room-B"), law enforcement encountered three individuals, later identified as the defendants LONG HUI LIN, a/k/a "DRAGON," JING LIN and DA WU.  From Room-B, law enforcement seized $258,130.00 in United States currency; two money counting machines; approximately three kilograms of marihuana, a Schedule I controlled substance; and more than 100 grams of liquid that field-tested positive for ketamine, a Schedule III controlled substance, found in glass vials of the same type as the empty vials found in Room-A.

13. When law enforcement officers entered Room B, all three individuals were in close proximity to both the narcotics and currency.  Specifically with respect to the narcotics, all three individuals were sitting on a couch in Room B, the seized marihuana was also on that couch and the liquid ketamine was located within the proximity of the base of the couch at the defendants' feet.  The defendant JING LIN had money in both of his pant pockets and, in one pant pocket, he had two zip lock bags with a white powdery substance that appeared to be ketamine.  Room B is a small room that did not appear to be a living space.  There was no clothing in Room B and no bed.  Room B appeared to be set up for the

purpose of producing and packaging narcotics. It contained a couch, a table with a microwave on it and bags of money around the room, in addition to the narcotics.

14. Based on my training and experience, I know that digital scales; money counting machines; and zip lock bags, bottles and glass vials of the types found at the Premises are all used in the manufacture and distribution of controlled substances. Additionally, large sums of cash in a residence is also often indicative of narcotics trafficking.

15. All four defendants were arrested and received <u>Miranda</u> warnings.

16. Post-arrest, the defendant LONG HUI LIN, a/k/a "DRAGON," responded to officers calling to him using the name "Dragon." In addition, LONG HUI LIN, a/k/a "DRAGON" was observed to have a tattoo on his hand that matches that of a tattoo on the hand of one of the individuals seen stacking large quantities of U.S. currency inside of a large black bag in the video recovered from Ye Zhen Zhao's phone. Based on the foregoing, there is probable cause to believe that the defendant LONG HUI LING, a/k/a "DRAGON" is the person identified as "Dragon" in Zhao's phone.

8

17. WHEREFORE, your deponent respectfully requests that the defendants DAO JIAN CHEN, LONG HUI LIN, a/k/a "DRAGON," JING LIN and DA WU be dealt with according to law.

JACKY J. HE
Special Agent
United States Department of Homeland Security,
Homeland Security Investigations

Sworn to by reliable telephonic means this
18th day of September, 2020

THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK